# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ARCHIE JAMES TAYLOR, Administrator of the Estate of Keenan Trevon Taylor, Deceased,<br><br>  Plaintiff,<br><br>vs.<br><br>STATE OF OKLAHOMA, ex rel. OKLAHOMA DEPARTMENT OF HUMAN SERVICES, GRANVILLE L. HAYNES, II, JOHN DOES Nos. 1-3, individually, BILLIE J. MAYBERRY, MELISSA PIERSON, LESLIE A. BEYER, and JANE DOES Nos. 1-3, individually,<br><br>  Defendants. | Case No. 07-CV-380-GKF-PJC |

## OPINION AND ORDER

This matter comes before the Court on the Motion to Dismiss of defendants Oklahoma Department of Human Services ("DHS"), Melissa Pierson ("Pierson") and Leslie A. Beyer ("Beyer"). [Document No. 7].

Plaintiff Archie James Taylor ("Taylor") is the grandfather of Kennan Trevon Taylor ("Keenan"), who was two years old at the time of his death. On June 9, 2005, Keenan died as a result of abuse by his father, Carlis Anthony Ball ("Ball"). DHS employees had removed Keenan from his mother and placed him with Ball. Taylor has been appointed administrator of Keenan's Estate in state probate court. Taylor alleges in his Amended Petition[1] that, within several weeks prior to Keenan's death, "there had been at least three separate reports of abuse by Ball, two of which were still pending" when Keenan died. Taylor contends DHS employees were negligent (1)

---

[1] Taylor filed the Amended Petition in state court prior to removal by movants.

in failing to promptly and thoroughly investigate the charges of abuse; (2) in failing to remove Keenan from Ball's home; and (3) in failing to take proper steps to protect Keenan.

Taylor brings four separate claims in the Amended Petition. In Count I, Taylor brings a federal civil rights claim pursuant to 42 U.S.C. § 1983 against "defendants." Taylor alleges that DHS workers violated Keenan's federally protected rights when, in negligent disregard and/or with deliberate indifference, they failed to inform proper authorities or take necessary action to remove Keenan from placement with Ball. In Count II, Taylor alleges that DHS employees negligently and intentionally, in bad faith and in reckless disregard, breached a duty of care to Keenan. In Count III, Taylor alleges the individual defendants breached their duty while acting within the scope of their employment and that DHS is liable under the doctrine of *respondeat superior*. In Count IV, Taylor alleges that defendant DHS owed a non-delegable duty to Keenan and is liable for the acts or omissions of its agents and employees.

Movants DHS, Pierson and Beyer raise four arguments for dismissal, each of which is addressed separately below.

I.

DHS argues the Amended Petition fails to state a claim upon which relief can be granted against it under 42 U.S.C. § 1983. A state agency is not a "person" against whom a § 1983 claim for money damages may be asserted. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64 (1989); *Lapides v. Board of Regents*, 535 U.S. 613, 617 (2002). Taylor responds that his § 1983 claim lies against the individual defendants and *not* DHS. *See* Taylor's Response Brief, page 6 [Document No. 8]. In light of Taylor's clarification, the argument is moot.

II.

Defendant DHS employees Pierson and Beyer argue they are entitled to qualified immunity from liability on Taylor's § 1983 claim. Although summary judgment provides the typical vehicle for asserting a qualified immunity defense, courts will also review this defense on a motion to dismiss. *Peterson v. Jensen,* 371 F.3d 1199, 1201 (10th Cir. 2004). The Supreme Court has stated that a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery unless the plaintiff's allegations state a claim of violation of clearly established law. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Asserting a qualified immunity defense via a Rule 12(b)(6) motion subjects the defendant to a more challenging standard of review than would apply on summary judgment. *Peterson v. Jensen,* 371 F.3d at 1201.

The Supreme Court recently prescribed a revised inquiry for federal courts' use in assessing motions to dismiss for failure to state a claim – whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1965 (2007). Courts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). The Court explained that a plaintiff must "nudge[] [his] claims across the line from conceivable to plausible" in order to survive a motion to dismiss. *Bell Atlantic*, 127 S.Ct. at 1974. The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims. *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court outlined the standard for determining whether public officials will be found immune from liability in civil suits. It states that

3

"government officials performing discretionary functions, generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. This determination is a question of law. For purposes of this inquiry, a constitutional right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent." *Id*. If a plaintiff is unable to demonstrate that the law allegedly violated was clearly established, the plaintiff is not allowed to proceed with the suit. *Medina v. City and County of Denver*, 960 F.2d 1493, 1497 (10th Cir. 1992).

Thus, this Court must examine whether it was clearly established within a sufficiently analogous factual setting that the alleged conduct of DHS workers Pierson and Beyer was grounds for a § 1983 violation. It is not enough to look at generalized legal principles. *Anderson v. Creighton*, 483 U.S. at 639-40.

Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision. *Davis v. Scherer*, 468 U.S. 195, 194 (1984); *Pueblo Neighborhood Health Centers v. Losavio*, 847 F.2d 642, 647 (10th Cir. 1988). Taylor's attempt to anchor his § 1983 claim in the alleged violation of an Oklahoma Administrative Code provision relating to child welfare workers is, therefore, unavailing.

Normally, state actors are liable under the Due Process Clause for their own acts, and not for the violent acts of third parties. *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1279 (Okla. 2003). There are, however, two recognized exceptions to this rule: (1) the special relationship doctrine; and

(2) the "danger creation" theory. *Uhlrig v. Harder,* 64 F.3d 567, 572 (10th Cir. 1995). Taylor argues that both exceptions apply in this case.

A special relationship exists when the state takes a person into its custody and holds him there against his will; the Constitution imposes upon the state a corresponding duty to assume some responsibility for the person's safety and well-being (*e.g.* when the individual is a prisoner or involuntarily committed mental patient). *Id.* The special relationship theory is inapplicable to the instant case because the Supreme Court has held there is no affirmative duty of the state to protect a child while in the custody of his father, who is in no sense a state actor. *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 201 (1989); *Yvonne L. V. New Mexico Dept. of Human Services*, 959 F.2d 883, 891 (10th Cir. 1992); *Briggs v. Oklahoma ex rel. Oklahoma Department of Human Services*, 472 F. Supp. 2d 1304, 1313-14 (W.D. Okla. 2007).

State officials can also be liable for the acts of third parties where those officials "created the danger" that caused the harm. *Christiansen*, 332 F.3d at 1281. The Tenth Circuit has articulated a six-part test:

> To make out a proper danger creation claim, a plaintiff must demonstrate that (1) the charged state entity and the charged individual actors created the danger or increased plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) defendants' conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking.

*Id.*, citing *Gonzales v. City of Castle Rock*, 307 F.3d 1258, 1263 (10th Cir. 2002). In considering the required scienter, courts have focused on the deliberateness of the conduct at issue. *Id.* The Due Process Clause protects against "deliberately wrongful government decisions rather than merely negligent government conduct." *Uhlrig*, 64 F.3d at 573. Thus, § 1983 liability will not lie absent

5

(1) "an intent to harm" or (2) "an intent to place a person unreasonably at risk of harm." *Id.* The latter requires that "the defendant recognize[] the unreasonable risk and actually intend[] to expose the plaintiff to such risks without regard to the consequences to the plaintiff." *Id.* at 573, n.8.

Taylor alleges that, "[b]eginning several months before the death of [Keenan] on June 9, 2005, reports were made to DHS and its employees in Tulsa County of suspected abuse of [Keenan] by Ball, which resulted in the child having swollen legs, belt marks, bruises, scarring, black eyes, running sores, and malnutrition." Taylor further alleges that DHS workers acted "with negligent disregard and/or deliberate indifference" to Keenan's needs, and that they were "reckless, or were callously indifferent" to Keenan's rights. The Tenth Circuit has defined "'an intent to place a person unreasonably at risk' (or reckless conduct) as when a state actor 'was aware of a known or obvious risk that was so great that it was highly probable that serious harm would follow and he or she proceeded in conscious and unreasonable disregard of the consequences.'" *Uhlrig*, 64 F.3d at 574, citing *Medina*, 960 F.2d at 1496. Under that standard,[2] this Court concludes that, in light of the facts alleged in his Amended Petition, Taylor has given the Court reason to believe that he has a reasonable likelihood of mustering factual support for his § 1983 claim under a "danger creation" theory.[3]

---

[2] In *DeShaney*, as mentioned above, the Supreme Court held that the state of Wisconsin had no constitutional duty to protect a child from his father's violence. The Court rejected the "special relationship" exception where the child was in the custody of his natural father. In reviewing the grant of summary judgment on certiorari, the Supreme Court did not address the "danger creation" exception. Although the Court recognized that the state functionaries "stood by and did nothing when suspicious circumstances dictated a more active role for them," *DeShaney*, 489 U.S. at 203, the State "played no part in [danger] creation, nor did it do anything to render him any more vulnerable to them." *Id.* at 201. The presence of the danger creation theory, the Tenth Circuit's definition of "an intent to place a person unreasonably at risk," and the allegations in Taylor's Amended Petition require denial of the motion to dismiss at issue here.

[3] In ruling on the motion to dismiss, the Court cannot consider Taylor's unsubstantiated argument, not mirrored by any allegations in the Amended Petition, that "[i]nitial discovery obtained from the Defendant DHS after order of the Tulsa County District Court has shown that some of the alleged investigations conducted by employees of DHS were fraudulent and made up." In the event defendants seek summary adjudication on the defense of qualified immunity, such evidentiary materials, if any, may be submitted to the Court in response.

6

III.

Defendant DHS argues that Taylor's state tort claims are barred by the Oklahoma Governmental Tort Claims Act ("GTCA"), OKLA. STAT. tit. 51, §§151-172. DHS relies upon three exceptions to liability set forth in the GTCA. The Court considers each in turn.

Section 155(3) exempts the state from liability if a loss or claim results from "[e]xecution or enforcement of the lawful orders of any court." DHS contends that "[a]ll of DHS's actions were overseen by a state judge in the context of the state juvenile court proceeding in Tulsa County District Court (Case No. DH-04-637) involving Keenan and thus DHS was doing nothing more than following the juvenile court's orders regarding the care and treatment of Keenan entered in that case." In raising this contention, DHS raises factual matters outside the pleadings which the court declines to consider in conjunction with the motion to dismiss. Plaintiff's Amended Petition makes no reference to any court order other than the probate court order appointing Taylor Administrator of Keenan's Estate. Even if the court were to consider factual matters outside the pleadings, the exemption is inapplicable because Taylor's allegations of negligence are not based on the execution or enforcement of any court order, but rather on DHS's later failure to remove him from Ball's direct care or seek medical treatment on serious allegations of abuse. *Briggs,* 472 F. Supp. 2d at 1309.

Section 155(28) exempts state agencies from liability if a loss or claim results from "[a]ny claim based upon an act or omission of an employee in the placement of children." Again, Taylor responds that he is not basing his claim on the placement of Keenan with his father, but upon the later failure by DHS to protect Keenan, remove him from Ball, or to seek medical treatment following allegations of abuse.

The object of the GTCA was to make Oklahoma and its political subdivisions liable in tort, except where the Legislature specifically and explicitly provided exemptions from liability.

7

Oklahoma courts construe the exemptions restrictively. *Holt v. State ex rel. Oklahoma Dept. of Transportation,* 927 P.2d 57, 61 (Okla. Civ. App. 1996). In viewing the exemption restrictively, this Court cannot conclude at this juncture that section 155(28) exempts DHS from its alleged subsequent failure to remove Keenan from Ball's custody.

Section 155(4) exempts the state from liability if a loss or claim results from "enforcement of or failure to . . . enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy." Taylor counters that nothing in his Amended Petition asserts that any basis of liability against defendants is the result of any failure to enforce a statute or written policy.

Taylor's primary grievance against DHS is its alleged negligent failure to supervise and monitor its employees, who failed to promptly and thoroughly investigate the charges of abuse and remove Keenan from his father's home. The Oklahoma Children's Code, OKLA. STAT. tit. 10, § 7003-1.1(A)(1) provides that "[u]pon notification or receipt of a report that a child may be deprived . . . , [DHS] shall conduct an assessment or investigation in accordance with priority guidelines established by . . . [DHS]." The Oklahoma Child Abuse Reporting and Prevention Act, OKLA. STAT. tit. 10, § 7106(A)(1), provides that if DHS receives a child abuse report, it "shall promptly respond to the report by initiating an investigation of the report or an assessment of the family in accordance with priority guidelines established by [DHS]." The investigation must be thorough, including, among other things, determinations of "[t]he nature, extent and cause of the abuse . . . ," and "[t]he identity of the person responsible for the abuse." OKLA. STAT. tit. 10, § 7106(B). These statutes obligate DHS and its employees thorough investigations into reports of child abuse. DHS's alleged failure to supervise and monitor its employees, who in turn failed to promptly and thoroughly investigate the charges of abuse falls squarely within section 155(4) and its exemption from liability.

The intent and purpose of section 155(4) is the preservation of sovereign immunity against claims for losses resulting from a state agency's failure to enforce a law. To the extent Taylor seeks to hold DHS liable based on its employees' failure to investigate, the Court finds DHS exempt under section 155(4). *Briggs*, 472 F. Supp. 2d at 1310.[4]

## IV.

Pierson and Beyer argue that, in view of Taylor's allegation that they were acting within the scope of their employment, they cannot be sued personally under the Oklahoma Governmental Tort Claims Act. *See* Amended Petition, ¶ 30; and OKLA. STAT. tit. 51, §163(C). In response, Taylor "does not contest Defendant's assertion that liability under the Oklahoma Governmental Tort Claims Act does not apply to individual State employees." [Document No. 8, p. 11, n.2]. The motion to dismiss is granted with respect to the tort claims brought against defendants Pierson and Beyer in Counts II and III.

WHEREFORE, defendants' Motion to Dismiss [Document No. 7] is granted in part and denied in part.

IT IS SO ORDERED this 29th day of January 2008.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma

---

[4] A § 1983 claim may be available, even though a state remedy is foreclosed by the Oklahoma Governmental Tort Claims Act. *Tiemann v. Tul-Center, Inc.*, 18 F.3d 851, 853 (10th Cir. 1994). "[T]he [Oklahoma] Governmental Tort Claims Act and 42 U.S.C. § 1983 provide a 'double-barreled system,' and . . . escaping liability under one does not necessarily mean that a party also escapes liability under the other." *Phillips v. Wiseman*, 857 P.2d 50, 53 (Okla. 1993).